STATE of Alaska, Appellant,

v.

Rocky L. ESTRADA Sr., Stanley D. Johnson, and Albert M. Kookesh Sr., Appellees.

No. A–10893.

Court of Appeals of Alaska.

Dec. 27, 2013.

4. *Hertz,* 8 P.3d at 1147.

Lance B. Nelson, Senior Assistant Attorney General, Anchorage, and John J. Burns, Attorney General (opening brief) and Michael C. Geraghty, Attorney General (reply brief and supplemental brief), Juneau, for the Appellant.

Tony Strong, Douglas, for the Appellees.

Before: MANNHEIMER, Chief Judge, ALLARD, Judge, and COATS, Senior Judge.*

* Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and

*OPINION*

MANNHEIMER, Judge.

The Alaska Board of Fisheries often decides to prohibit fishing or restrict certain fisheries on a general basis—for example, by establishing open and closed seasons, or by defining the geographic areas where fish may be taken, or by setting catch limits, or by restricting the gear that people can use when fishing. To achieve these purposes, the Board has enacted two types of administrative regulations.

In the first type of administrative regulation, the Board of Fisheries directly specifies the applicable prohibitions or restrictions in the regulation itself. But in the second type of administrative regulation, the Board simply declares that all people who wish to participate in a particular fishery must obtain the proper permit from the Department of Fish and Game, and then the regulation authorizes the Department to attach various conditions to these permits—conditions such as catch limits, gear restrictions, time or date limitations, and the like. Thus, the permit specifies many of the limitations that apply to that fishery—and these limitations are formulated by the Department of Fish and Game, rather than the Board of Fisheries.

In the case now before us, the district court ruled that this second type of administrative regulation is unlawful. The court concluded that, under Alaska law, all such restrictions and prohibitions on fishing must be enacted by the Board of Fisheries, and these restrictions must be expressly codified in administrative regulations promulgated by the Board under the provisions of Alaska's Administrative Procedure Act (AS 44.62). Accordingly, the district court ruled that it was unlawful for the Board of Fisheries to enact regulations that purport to delegate this decision-making power to the Department of Fish and Game, or that allow the Department to impose these restrictions as conditions to fishing permits.

For the reasons explained in this opinion, we disagree with the district court. We con-

Administrative Rule 23(a).

clude that Alaska law does allow the Board of Fisheries to enact this second type of regulation—*i.e.*, regulations that allow the Department of Fish and Game to establish restrictions on fishing by making these restrictions a condition of fishing permits.

*The legal and factual background of this case*

*(a) The general legal authority of the Board of Fisheries, and the Board's enactment of the regulation at issue in this case, 5 AAC 01.015*

The Alaska Legislature has created the Board of Fisheries to conserve and develop the fishery resources of this state.[1] The Board's mission is to promote and protect the different types of fishing (subsistence, commercial, sport, and personal use), and the various types and species of fish.

To enable the Board of Fisheries to carry out this mission, the Legislature has given the Board the authority to adopt "[any] regulations it considers advisable ... for the conservation, development, and utilization of fisheries".[2] More specifically, the Legislature has given the Board the authority to control or supervise all facets of fishing—such things as establishing open and closed fishing seasons;[3] defining the geographic areas where fish may be taken;[4] setting quotas, bag limits, harvest levels, and sex and size limitations on the taking of fish;[5] and defining the means and the methods by which people are allowed to pursue, capture, and transport fish.[6]

(Pursuant to this authority, the Board of Fisheries has enacted hundreds of regulations found in Title 5 of the Alaska Administrative Code. Some of these regulations apply statewide, while many apply to specified geographic areas.).

As we explained in the introduction to this opinion, the Board of Fisheries has enacted two types of regulations to govern and control the fisheries within Alaska. Many of the Board's regulations directly codify—*i.e.*, directly specify—restrictions such as seasons, harvest limits, and gear requirements for a particular fishery.[7] But the Board has also promulgated regulations that take another approach. Regulations of this second type do not directly specify all the rules that govern a particular fishery. Rather, these regulations require people who wish to participate in the fishery to obtain a permit from the Department of Fish and Game—and the regulations authorize the Department to attach various conditions to these permits. Under this system of regulation, the *permit* specifies many of the limitations that apply to that fishery.[8]

The regulation at issue in this case—5 AAC 01.015—is a statewide regulation of this second type.

Subsection (a) of 5 AAC 01.015 declares that anyone who engages in subsistence fish-

1. AS 16.05.221(a).

2. AS 16.05.251(a)(12).

3. AS 16.05.251(a)(2).

4. AS 16.05.251(a)(2).

5. AS 16.05.251(a)(3).

6. AS 16.05.251(a)(4).

7. *See, e.g.,* 5 AAC 01.010 (a statewide provision specifying the types of gear that may be used for subsistence fishing, and listing certain prohibited methods of fishing); 5 AAC 01.760(b)—(c) (specifying the bag and possession limits for the subsistence sockeye salmon fishery in Redoubt Bay and Lake); 5 AAC 71.010 (specifying bag, possession, and size limits for sport fishing in the Kuskokwim—Goodnews area).

8. *See, e.g.,* 5 AAC 01.015(b) (a statewide provision listing various conditions that the Department may attach to subsistence permits for the taking of salmon); 5 AAC 01.230(c) (authorizing the Department to attach conditions to a subsistence fishing permit in the Yukon area if the permit is for fish other than salmon, but added restrictive measures are needed for the protection of salmon); 5 AAC 01.730(e) (listing various conditions that the Department may attach to subsistence fishing permits for the taking of salmon in the Southeastern Alaska area); 5 AAC 28.220(c) (listing various conditions that the Department may attach to fishing permits for groundfish in the Prince William Sound area); 5 AAC 28.379(a) (listing various conditions that the Department may attach to permits for miscellaneous groundfish in the Cook Inlet area); 5 AAC 38.110(a) (listing the various conditions that the Department may attach to permits for clam fishing in Southeastern Alaska).

ing for salmon must have the proper subsistence permit (unless another provision of law specifically exempts that geographic area from the permit requirement). Subsection (b) of the regulation then lists the conditions or restrictions that the Department can attach to these subsistence permits (again, unless another regulation specifically provides otherwise).

Here is the opening language of 5 AAC 01.015(b), with the pertinent provisions italicized:

> (b) If a subsistence fishing permit is required by this chapter, the following permit conditions apply unless otherwise specified by the subsistence fishing regulations in this chapter:
>
> (1) *the numbers of fish taken for subsistence use may not exceed the limits set out in the permit;*
>
> (2) permits must be obtained ... prior to subsistence fishing;
>
> (3) permits must be retained in the possession of the permittee and be readily available for inspection while taking fish; ...
>
> (4) *the permit may designate the species and numbers of fish to be harvested, time and area of fishing, the type and amount of fishing gear[,] and other conditions necessary for management or conservation purposes* [.]

*(b) The Department of Fish and Game's efforts to preserve the viability of the Kanalku sockeye salmon subsistence fishery*

In 2001, the Alaska Department of Fish and Game conducted a study of the health of the sockeye salmon fishery in the Kanalku Lake area near Angoon. This fishery is an important subsistence resource for the residents of Angoon.

The Department's assessment revealed that the escapement of sockeye into Kanalku Lake had fallen to dangerously low levels— levels that put the fishery at risk of collapse. The Department met with members of the community, and it was agreed that community members would adopt voluntary conservation measures to protect the fishery. As part of this agreement, the Department altered the conditions of its subsistence permits to increase the authorized catch limits for sockeye salmon in nearby, less endangered fisheries.

However, the Department continued to monitor the Kanalku sockeye fishery and, after a few years, the Department determined that the voluntary conservation measures were inadequate to preserve the fishery. So in 2006, the Department altered the terms and conditions of its Kanalku subsistence permits to reduce the annual catch limit from 25 salmon to 15 salmon. (The Department maintained the higher catch limits at the less-endangered nearby fisheries.).

*(c) How the present case arose, and the district court's ruling that 5 AAC 01.015 is an invalid attempt by the Board of Fisheries to circumvent the regulatory process*

The present case arose in the summer of 2009. The three defendants were holders of subsistence permits authorizing them to fish for sockeye salmon in the Kanalku fishery. Each of the defendants' permits stated that they could take no more than 15 sockeye salmon per year.

A state trooper observed the defendants seining on the beach at Kanalku Bay and discovered that the defendants had collectively harvested 148 sockeye salmon. The defendants were therefore charged with violating 5 AAC 01.015(b)—*i.e.*, violating the terms and conditions of their permits.

The defendants asked the district court to dismiss the charges against them—arguing that it was illegal for the Department of Fish and Game to establish the 15–fish annual catch limit (or any other catch limit) by attaching terms and conditions to subsistence permits. The defendants argued that, under Alaska law, the only lawful way to establish a catch limit was for the Board of Fisheries to enact an administrative regulation that directly codified the catch limit.

The district court agreed with the defendants. The court concluded that, under the Alaska statutes, only the Board of Fisheries has the authority to adopt catch limits—and that those catch limits must be codified in administrative regulations promulgated by the Board under the Administrative Procedure Act.

The court declared that the Department of Fish and Game had no authority to establish catch limits through "internal decision" (*i.e.,* through decisions regarding the terms or conditions of subsistence fishing permits)— and that the Board of Fisheries could not lawfully enact a regulation that purported to confer this authority on the Department.

The district court acknowledged that the Board of Fisheries had complied with the Administrative Procedure Act when the Board enacted 5 AAC 01.015—the administrative regulation that requires people to have a permit if they engage in subsistence fishing, and that ostensibly gives the Department of Fish and Game the authority to set catch limits (and to establish other restrictions on subsistence fishing) by specifying those restrictions as terms or conditions of the subsistence permits.

But the district court concluded that, to the extent 5 AAC 01.015 purported to give this authority to the Department of Fish and Game, the regulation was invalid—that it was fatally inconsistent with the legislature's command that catch limits be set by the Board of Fisheries, and that these limits be codified in administrative regulations. The court declared that the Board of Fisheries had no power to "disregard [this] legislative requirement ... by adopting a regulation saying [that] it does not have to follow the Legislature's directive."

*Identifying the question presented in this case*

Alaska's Administrative Procedure Act, AS 44.62, governs the law-making powers of the administrative agencies in the executive branch of government. Generally speaking, the Administrative Procedure Act requires these agencies to enact an administrative regulation (adhering to the procedures specified in Article 4 of the Act, AS 44.62.180— 290) whenever the agency proposes to take any action that effectively creates or amends a rule or standard of general application, or that otherwise implements or interprets the law enforced or administered by that agency. *See* AS 44.62.640(a)(3).

But as the district court acknowledged in its written order, the regulation at issue in this case—5 AAC 01.015—was undeniably enacted in conformity with the procedures specified in the Administrative Procedure Act. The district court did not strike down this regulation because of any perceived *procedural* flaw in its enactment. Rather, the district court struck down the regulation because it concluded that the Board of Fisheries had no authority to enact any such regulation in the first place—*i.e.,* no authority to enact any regulation that delegated decisions about harvest restrictions to the Department of Fish and Game (through the permitting process).

As we have explained, the district court concluded that, under the pertinent statutes in AS 16.05, all decisions about harvest restrictions had to be made directly by the Board of Fisheries. Thus, the district court concluded, the Board acted illegally when it promulgated a regulation that delegated these decisions to the Department—and the resulting regulation was void.

See AS 44.62.020, which declares that a regulation adopted by an administrative agency is not effective unless it is "within the scope of authority conferred [by the legislature]." And see AS 44.62.030, which declares that when an administrative agency adopts a regulation that purports to implement or interpret a statute, "[the] regulation ... is not valid or effective unless [it is] consistent with the statute [it purports to implement or interpret]."

In other words: The present appeal does not require this Court to interpret the Administrative Procedure Act. Rather, the question presented in this appeal is whether the Alaska Legislature (in Title 16 of the Alaska Statutes) has given the Board of Fisheries the authority to enact regulations that (1) require all participants in a particular fishery to have a permit and that (2) authorize the Department to impose terms or conditions on these permits that restrict harvest levels, types of gear, and such—thus effectively allowing the Department of Fish and Game to make decisions about harvest levels and other harvesting restrictions.

*Why we conclude that the legislature has authorized the Board of Fisheries to enact regulations like 5 AAC 01.015—regulations that allow the Department of Fish and Game to establish harvest limits through the permitting process*

■ As we explained early in this opinion, AS 16.05.251(a) gives the Board of Fisheries the authority to control or supervise all facets of fishing—such things as establishing open and closed fishing seasons;[9] defining the geographic areas where fish may be taken;[10] setting quotas, bag limits, harvest levels, and sex and size limitations on the taking of fish;[11] and defining the means and the methods by which people are allowed to pursue, capture, and transport fish.[12]

Moreover, in situations like the one presented in the Kanalku Lake are—situations where a fish population is an important subsistence resource, but where the subsistence harvest is too great to maintain a sustained yield from the population—the Board is *required* to enact regulations that (1) prohibit all non-subsistence use of the fish population and that (2) impose tailored restrictions on the subsistence harvest. *See* AS 16.05.258(b)(4).

These statutes clearly allow (or, in some instances, require) the Board of Fisheries to exercise its authority over these matters by enacting regulations. But the question raised in this appeal involves the permissible *content* of these regulations. Can the Board enact regulations that control fishing, and fisheries, through a permitting process—a process that allows the Department of Fish and Game to set harvest limits and other harvesting restrictions as conditions of the permit?

As we explained toward the beginning of this opinion, the regulation at issue in this case (5 AAC 01.015) is not the only instance where the Board has enacted this type of regulation. Title 5 of the Alaska Administrative Code contains many fishing regulations which envision that the primary restrictions on fishing will be contained in the terms and conditions of the applicable fishing permit.[13]

This type of regulation appears to be explicitly authorized by statute, at least for subsistence fisheries. In AS 16.05.330(c), the Legislature has given the Board of Fisheries the authority to enact regulations providing for the issuance of subsistence permits "as needed for authorizing, regulating, and monitoring the subsistence harvest of fish".

(This same statute *requires* the Board to enact regulations of this type—*i.e.*, regulations that control a subsistence fishery through permitting—whenever the statutory preference for subsistence fishing requires restriction or prohibition of non-subsistence fishing in order to maintain a sustained yield of the fish population.).

The district court (in its written order) and the three defendants (in their briefs to this Court) argue that the permitting process authorized by AS 16.05.330(c) was not intended to supplant, or even to supplement, the Board of Fisheries' authority to enact regulations that directly codify harvest limits and other harvesting restrictions for the various subsistence fisheries. Thus, they argue, the Board has no authority to issue regulations that delegate the decision-making in these matters to the Department.

But, at best, the defendants' arguments leave this issue no more than debatable. And that being the case, there are two legal considerations that counsel us to uphold the challenged regulation.

First, the question of whether the Legislature has authorized the Board of Fisheries to enact this type of regulation is ultimately a question of legislative intent. The Board of Fisheries obviously has concluded that it does have the authority to enact this type of regulation, and we are now being asked to review the Board's interpretation of its authorizing statutes.

9. AS 16.05.251(a)(2).

10. AS 16.05.251(a)(2).

11. AS 16.05.251(a)(3).

12. AS 16.05.251(a)(4).

13. *See, e.g.*, 5 AAC 01.230(c), 5 AAC 01.730(e), 5 AAC 28.220(c), 5 AAC 28.379(a), 5 AAC 38.110(a), 5 AAC 38.133(a), 5 AAC 38.165, and 5 AAC 77.015(c).

The Alaska Supreme Court has repeatedly ruled that when an appellate court is asked to review an administrative agency's interpretation of a statute, and when the administrative agency, in interpreting the statute, relied on its expertise within its field or on fundamental policies within its field, the appellate court should employ a deferential standard of review—what the Alaska Supreme Court has called "reasonable basis" review.[14] In such instances, the appellate court should defer to the agency's interpretation of the statute if the agency's decision appears to be a reasonable interpretation of the disputed law—even though the statute might be ambiguous and the appellate court might have reached a different conclusion if it were writing on a clean slate.

Second, because the question in this case is ultimately one of legislative intent, it is instructive that the Board of Fisheries has been enacting this type of regulation for decades (*i.e.*, regulations that allow the Department of Fish and Game to set harvest limits and other harvesting restrictions through the permitting process), and the Legislature has never taken action to prohibit or restrict the Board's practice. (For instance, the regulation at issue in this case, 5 AAC 01.015, was enacted twenty years ago. *See* Register 126, part 1, issued May 15, 1993.)

Under Alaska law, administrative regulations are not enacted in secret. The Administrative Procedure Act requires that any proposed regulation be disseminated and subjected to public comment before the agency takes action. *See* AS 44.62.190—215. If the agency approves the regulation, the agency must submit the regulation to the governor for review. *See* AS 44.62.040(c). If the governor also approves the regulation, it must then be codified in the Alaska Administrative Code, and the lieutenant governor must periodically publish a register of all newly enacted regulations. *See* AS 44.62.130.

In short, the Alaska Legislature has had ample opportunity to learn that the Board of Fisheries is enacting regulations of this type. If the Legislature believed that the Board of Fisheries had misinterpreted or overstepped its authority, the Legislature could have intervened by amending the pertinent authorizing statutes. The Legislature's failure to do so indicates that the Legislature does not perceive these regulations to be *ultra vires*—that is, beyond the Board's lawful authority.

We accordingly hold that the Board of Fisheries has the authority to enact regulations of this type, and we reverse the district court's decision to the contrary.

The regulation at issue in this case, 5 AAC 01.015, was a valid exercise of the Board's authority, and therefore the three defendants in this case were required to adhere to the terms and conditions of their subsistence fishing permits, even though those terms and conditions were set by the Department of Fish and Game rather than the Board of Fisheries itself.

### Conclusion

The judgement of the district court is REVERSED, the charges against the defendants are reinstated, and this matter is remanded to the district court for further proceedings on those charges.

---

**14.** *See Alaska Fish & Wildlife Conservation Fund v. Alaska Board of Fisheries,* 289 P.3d 903, 911–12 n. 31 (Alaska 2012); *Alaska Exchange Carriers Ass'n v. Regulatory Commission of Alaska,* 262 P.3d 204, 208–09 (Alaska 2011) ("When a matter involves agency expertise[,] we apply a 'reasonable basis' test, giving deference to the agency's specialized knowledge and expertise.").